OPINION OF THE COURT
Robert F. Doran, J.
This is an action for breach of contract which arises out of the construction of the Clinton County Nursing Home/Infirmary in the City of Plattsburgh, New York. The Facilities Development Corporation (hereinafter referred to as FDC), acting for the County of Clinton (hereinafter referred to as Clinton), entered into a contract on December 20, 1973 with defendant Jeremiah Oosterbaan (hereinafter referred to as Oosterbaan), an architect, to undertake the design and supervision of construction of the Clinton County Nursing Home. That contract required Oosterbaan to complete the design, including plans and detail specifications, as well as to furnish general supervision of the actual construction and structural work of the several contractors, including, among others, defendant Aaron K. Lasher Plumbing and Heating (hereinafter referred to as Lasher). The Oosterbaan contract was approved as to form on April 20, 1974 by the Attorney-General of the State of New York.
Then, on January 22, 1975, FDC and Clinton entered into an agreement, pursuant to Facilities Development Corporation Act § 8-b (L 1968, ch 359, § 1, as amended by L 1972, ch 524, § 1, as renamed by L 1973, ch 658), whereby Clinton authorized FDC to proceed with the planning, design, construction and equipping of a nursing home and to incur the necessary costs and obligations relating to that project. In that contract, FDC agreed to provide such services as agent of Clinton. The agreement was authorized by County Resolution No. 274 dated December 11, 1974 and County Resolution No. 8 dated January 8, 1975.
Thereafter, on May 19, 1975, FDC entered into a contract with defendant Lasher pursuant to which Lasher was to perform all of the plumbing work. In that regard, Lasher, as principal, and defendant Aetna Casualty & Surety Company (hereinafter referred to as Aetna), a surety, executed a performance bond dated May 19, 1975 in favor of FDC.
The land upon which the nursing home was constructed was owned by Clinton, and all of the construction costs in connec *925 tion therewith were paid by Clinton through FDC. Construction of the facility was substantially completed on or about February 24, 1977, at which time the building was turned over to Clinton, which immediately occupied it and has since utilized the same as a fully operational nursing home.
After occupancy, Clinton and FDC claim the building was beset by plumbing problems such as drains becoming clogged and inoperable, toilets being sluggish and overflowing on occasion and staining at or next to toilet connections. As a result of these allegations of defective plumbing, Clinton, by Resolution No. 575 dated December 22, 1982, specifically authorized FDC to proceed with litigation on its behalf. The action by FDC was commenced on or about January 24, 1983.
Oosterbaan now moves for summary judgment dismissing the complaint on the grounds that: (a) FDC has no standing to bring this action and has sustained no damage; (b) the complaint does not allege facts sufficient to grant subject matter jurisdiction over the matters alleged in the complaint; (c) FDC lacks legal capacity to sue; and (d) the complaint fails to state a cause of action.
FDC was created by the Laws of 1968 (ch 359, as amended by L 1973, ch 658). The Legislature created said corporation for the following purposes, among others: “It is further found and declared that the construction, modification, reconstruction and rehabilitation of municipal hospitals and related health care facilities, including the provision of equipment, are public purposes and are necessary for the protection of the health, safety and welfare of the people of the state. To assure that such purposes are carried out, it is further found and declared that the * * * facilities improvement corporation created by this act should be empowered, in cooperation with the state, municipalities and the New York state housing finance agency, to provide for the timely construction and modernization of municipal hospitals and related facilities at a reasonable cost and in accordance with the health needs of the community.”
FDC is designated a public benefit corporation (Facilities Development Corporation Act § 4) and is authorized to sue and be sued; to design, construct, acquire, reconstruct, rehabilitate and improve health facilities; to make and execute contracts and all other instruments or agreements necessary or convenient for the exercise of its powers; to engage the services of construction, engineering, architectural, legal and financial *926 consultants, surveyors and appraisers, on a contract basis (Facilities Development Corporation Act § 5 [1], [10], [14], [15]); and to enter into an agreement with a municipality providing for the design by the corporation of a health facility or health facilities for such municipality at the sole cost and expense of the municipality (Facilities Development Corporation Act § 8-b [1], [2])-
Further, Facilities Development Corporation Act § 12 provides: "1. The state supreme court shall have exclusive jurisdiction of any action, suit or special proceeding brought by or against or involving the corporation”.
Also, FDC’s municipal assistance program is governed by regulations designated as 21 NYCRR part 2002, which provides (§ 2002.6): "2002.6 Municipality/corporation relationship. Any agreement between the corporation and a municipality shall contain provision that the corporation shall act as agent of the municipality in all matters concerning the project. All obligations or liabilities incurred by the corporation with respect to the project shall be incurred by the corporation as agent of the municipality and not as principal.” (See also, §§ 2002.5, 2002.8 [a] [2]; § 2002.11 [b].)
There is no question that FDC is the agent of the disclosed principal Clinton, and, as a general rule of agency, an agent may be authorized to institute actions with respect to the subject matter of its agency. The authorization to commence the action is Clinton Resolution No. 575.
An agent is a substitute or deputy appointed by his principal, with the power to do things which the principal may or can do, and primarily to bring about business relations between the principal and third persons (2 NY Jur 2d, Agency and Independent Contractors, § 1, at 471). Since an agent has the authority granted to him by the principal, he is in a position similar to the principal.
Further, it is apparent from the contracts and related papers that FDC and Clinton intended that FDC be bound as principal in addition to its acting as agent, since those contracts show that FDC pledged its credit and bargained for labor, materials and professional services. Although an action must generally be prosecuted by a real party in interest, the real party in interest is the party who, by substantive law, possesses the right sought to be enforced. The test is whether the plaintiff has a beneficial interest in the cause of action (O’Sullivan v Jarach-Guetta Indus. Overseas Co., 194 Misc 534; *927 Matter of Chauvaux v Chauvaux, 82 Misc 2d 518). In the case at bar, such is the situation.
The purpose of the rule that the action must be maintained by the real party in interest is to insure that the defendant will not be sued twice on the same claim and to guarantee him the right to interpose all defenses he has against the claim (see, McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 1001, p 351). The court finds that: FDC has standing to sue; FDC may properly maintain this action in its own name; there is a genuine controversy; this court has subject matter jurisdiction; and the complaint does state a cause of action.
In a cross motion, defendant Lasher seeks to amend its answer to allege a second affirmative defense as against the plaintiff, asserting that any damage alleged in the complaint was the result of the culpable conduct of the plaintiff, and to allege a cross claim against defendant Oosterbaan and third-party defendants seeking indemnification, contribution and apportionment of damages. In the present posture, the papers before this court clearly establish that, although not specifically pleaded in its answer, Lasher has taken the position it now seeks to plead in its amended answer. Such pleading is no surprise to the parties hereto, and no one is prejudiced by such amendment. The cross motion of Lasher is granted. The motion of defendant and third-party plaintiff Oosterbaan is denied in all respects.